CEMETERY ASSOCIATION v. JOSEPH MENINGER.

1. HIGHWAY; *Road Without Outlet.* A road opening at one end into a thoroughfare, but without outlet or egress at the other, and leading only to a farm and a cemetery, may nevertheless be a public highway.

2. ———— *Dedication; How Proven.* The dedication and acceptance by the public of such a highway may be proved in the same manner, and by the same character of testimony, as in the case of an ordinary thoroughfare.

3. ———— *Dedication; Acceptance.* Outside of cases of condemnation, and possibly prescription, to constitute a public road two things are essential, a dedication by the owner of the soil, and an acceptance thereof by the public.

4. ———— *User; Intent of Owner.* A highway may be proved by long usage; but for this, the user must be such as to show that the public accommodation requires it to be a highway, and that it is the intention of the owner of the soil to dedicate the way to the public.

5. ———— Whether the user has been continued for such a length of time, and is of such a character as to show these facts, is ordinarily a question for the jury.

6. CEMETERY; *Public Place; Highway Established by User, with Owner's Knowledge.* A cemetery is ordinarily a public place. The accommodation of the public may require a highway to it; and the use of a way to it for funeral processions, and by parties going to and from the cemetery, with the knowledge of the owner of the soil, may be evidence sufficient to prove a highway.

### *Error from Wyandotte District Court.*

MENINGER brought ·trespass against *The City Cemetery Association,* a corporation, to recover damages for breaking and entering plaintiff's close and tearing down his fences, etc. The action was commenced before a justice of the peace. Defendant denied plaintiff's title to the premises, and the case was thereupon certified to the district court, where it was tried at the October Term 1873. The real question was, whether the *locus in quo* was a highway. The facts are fully stated in the opinion. *Meninger* had judgment for $20 damages, and the defendant brings the case here on error.

*D. B. Hadley,* for plaintiff in error, contended that the facts showed that the lands claimed by Meninger were a highway—that declaration by the land-owner, and acceptance by the public, were sufficiently shown, and the court erred in its instructions to the jury.

*Scroggs & Bartlett,* for defendant in error, maintained that the instructions were right, and cited Angell on Highways, 1; 7 Mich., 449; 2 Metc., (Ky.) 98; 22 Iowa, 466; 23 Barb., 103; 7 Mass., 33; 3 Foster, 327. There must be two com-

21 —14 KAS.

petent parties to constitute a valid dedication of lands to the
public use; the grantee must *accept* the land dedicated, either
in terms, or by treating it as public property by doing work
upon it, by general and uninterrupted user by the whole
public, or in some other manner signifying its acceptance:
29 Iowa, 73; 12 Mich., 401; 36 Ill., 92. The public, and
not merely a public corporation, must be the chief beneficiary
in a dedication of land: 19 Ohio St., 514; 19 Pick., 405;
16 Barb., 251; 2 Selden, 257.

The opinion of the court was delivered by

BREWER, J.: The question in this case is as to the existence
of an alleged highway. The facts are these: In 1857 one
Sophia Clement was the owner of a tract of about seventy
acres, a little north of the city of Wyandotte. A portion of
this, on the west side, was inclosed and occupied by her as a
residence. Along the east of this inclosure was a traveled
road which ran from the city of Wyandotte to a saw-mill.
In 1857 or 1858 she sold ten acres east of her inclosure for
a cemetery, and which in the latter year was fenced and plat-
ted into lots. Between the west cemetery fence and the fence
on the east of her inclosure, was left a road of about thirty
feet in width, and the same as the previously traveled road,
none of which however was on the cemetery grounds. The
two gates of the cemetery opened and the two avenues of the
cemetery led into this road, and it was the regularly traveled
road to and from the cemetery, without objection, and without
obstruction, from that time until the spring of 1873, when
defendant in error fenced the south end of it. Prior to this
time however, and in 1867 or 1868, the saw-mill lying north
of these grounds having been abandoned, the owner of the
land immediately north of the cemetery had fenced across the
road, so that from that time the travel thereon had been only
by the occupant of the tract north, the occupant of the Clement
field, and parties visiting them, and of parties going to and
from the cemetery. Mrs. Clement lived on the place until
her death in 1864, with full knowldgee of the use of this road

by the public. After her death it was occupied by a tenant for a series of years, and until 1870, when defendant in error bought and moved onto it. There was other testimony tending to show an intention on the part of Mrs. Clement to dedicate this road to the use of the public, but it is unnecessary to notice it here. At the instance of the defendant in error the court gave this instruction:

"If the jury find from the evidence that the land in question has not been traveled since 1860 except by the owner of the real estate, one of his neighbors, and persons attending funerals to the cemetery of said defendant, then the court instructs the jury that such travel is not sufficient to constitute said way a public highway by use, and they will find in favor of the plaintiff."

The jury found against the existence of the highway. It may be remarked that the fee of this cemetery is in the city of Wyandotte, and the association, plaintiff in error, holds simply a lease for ten years from 1870. What the terms and conditions of that lease are, we are not advised. But as the grounds belong to the city, and as they have been used as a cemetery since 1858, and for a dozen years before this association obtained any control over them, we must presume that they are public cemetery grounds, and not a mere private cemetery for a single family or organization. It is true that 1. Highway; road without outlet. this road has not for years had an outlet on the north, and has therefore not been in the ordinary sense of the term a thoroughfare; and it is also true that it has been one of the disputed questions in the law of ways whether such a road could be legally held a public highway. See on the one hand, *Austin's Case*, 1 Ventr., 189; *Woodyer v. Hadden*, 5 Taunt., 126; *Wood v. Veal*, 5 B. & A., 454; *Simmons v. Mumford*, 2 R. I., 172; *Holdam v. Trustees Cold Spring*, 23 Barb., 103. And on the other, *The Rugby Charity v. Merryweather*, 11 East, 375; *Rex v. Lloyd*, 1 Camp., 260; *Bateman v. Bluck*, 14 Eng. L. & Eq., 69; *People v. Kingman*, 24 N.Y., 558; *Ferris v. Bramble*, 5 Ohio St., 109; *Sherman v. Burck*, 32 Cal., 241; *Bankhead v. Brown*, 25 Iowa, 540; *State v. Price*, 21 Md., 448. In this state the question has

been before the courts, and it has been settled that such a road may be a public highway: *Masters v. McHolland,* 12 Kas., 17. It follows from this, that the authorities may con-

2. Proof of dedication. demn land for such a road, that the owner may by dedication constitute such a road a public highway, and that the fact of such dedication may be proved in the same manner and by the same character of testimony as in case of a thoroughfare. We say nothing now of the comparative amount of testimony necessary to establish the fact of a dedication in the two cases. In order to constitute a way a public road, outside of cases of condemnation, and possibly of prescription, it is said that two things are es-

3. Dedication— how made. sential, first, a dedication by the owner of the soil, and second, an acceptance by the public. In the different cases reported stress is laid upon one or the other of these matters, according to the character of the questions involved. Thus, where the former owner is attempting to obstruct a way, the important matter. is, whether he has once actually made a dedication, and so estopped from obstructing it; and to that the testimony mainly runs. On the other hand, where the authorities are prosecuted for not repairing a highway, the important question often is, whether the public have accepted the dedication, and upon that is most of the testimony. For the mere fact that a land-owner has dedicated certain land to the use of the public, does not necessarily cast upon an unwilling public the duty of improving and keeping it in repair. No formal acceptance by any particular authorities is essential. The mere user by the public may be of such a character as to constitute an acceptance. Indeed, such user by the public with the knowledge of the owner may be sufficient evidence of both the dedication and the acceptance. We know this doctrine is denied by some courts, but it seems to us to rest upon the soundest principles. Of course, no mere temporary or occasional use will be sufficient. It was said by Ch. J. Richardson, in *Barker v. Clark,* 4 N. H., 380, that "we entertain no doubt that a highway may be proved by long usage; but a way, to

become public, must be used in such a manner as to show that the public accommodation requires it to be a highway, and that it is the intention of the owner of the land to dedicate the way to the public." See also, *Holdam v. Trustees Cold Spring*, 23 Barb., 103; *Clements v. West Troy*, 10 How. Pr., 199; *Onstott v. Murray*, 22 Iowa, 457; *Hanson v. Taylor*, 23 Wis., 547; (though in this case see a vigorous dissenting opinion of Ch. J. Dixon;) *Buchanan v. Curtis*, 25 Wis., 99; Angell on Highways, § 161, and cases cited in note. It seems to us that the foregoing views are a fair statement of the rule applicable to these cases.

If a highway may be proved by usage, who is to determine whether the usage shown is sufficient? Does the usage prove an intention on the part of the owner to dedicate, and an acceptance by the public? These are questions of fact, and questions in their nature eminently appropriate for the consideration of a jury. *Drake v. Rogers*, 3 Hill, 604; *Trustees M. E. Church v. Council of Hoboken*, 33 N. Y., 26. Both the intention and acceptance are evidenced by a series of acts. It is impossible generally to put the finger on a single circumstance and say that this is conclusive. It is true the user may be so temporary or occasional as to justify a court in stating as matter of law that it is not evidence sufficient to prove a highway; but we think this is not such a case. A cemetery is as public a place as a court-house, or a market. It may not be frequented as much, but visits to it are as necessary and as certain. The accommodation of the public requires a highway to it. Over that way all must travel. We may keep away from the court-house, and avoid the market, but the place of the dead none may shun. Now if the accommodation of the public requires a highway to the cemetery, the use of the public of a way to it may be evidence of the acceptance by the public, and, if with the consent of the owner, of the dedication by him; and when continued, as it has been in this case for years, it is error for the court to state as matter of law that it is not sufficient evidence. That is a question

*(margin note: 4. User; intent of owner; questions of fact.)*

*(margin note: 6. Cemetery— public place.)*

which must be left to the jury. For the error in giving the instruction quoted, the judgment must be reversed and the case remanded for a new trial.

All the Justices concurring.