No. 18,736.

THE CITY OF KANSAS CITY, KANSAS, *Appellee*, v. JAMES
J. BURKE et al., *Appellants*.

SYLLABUS BY THE COURT.

1. OBSTRUCTION OF STREET—*May be Enjoined by City*. A city
   may maintain an action to permanently enjoin the obstruc-
   tion of a public street.

2. HIGHWAY — *Street — Dedication by Act of Estoppel.* A
   dedication of a highway may be shown by acts of estoppel
   on the part of a landowner, and where the proceedings for
   laying out a highway by the public authorities are defective,
   but it is shown that the owner of the land through which the
   road was attempted to be laid out signed the petition, was
   present with the viewers when they viewed the road, made a
   claim for damages and accepted the amount awarded, fenced
   his land on one side of the road and for years thereafter
   acquiesced in its improvement by the road overseer, he is
   estopped from contesting the validity of the highway, and
   his acts followed by user will constitute a dedication.

3. SAME—*Color of Title—Defective Records*. In such a case the
   records, although defective, are admissible in evidence to
   show color of title and the nature and extent of the claim of
   the public under the proceedings.

4. SAME—*User—Duration of, Immaterial*. Except when user
   is relied on to raise a presumption of dedication the duration of
   the user is wholly immaterial.

5. SAME—*Title in City to Use of Street*. Upon the facts stated
   in the opinion the judgment granting a permanent injunction
   against the defendants and quieting the title of the city to the
   use of a public street is upheld.

Appeal from Wyandotte district court, division No.
2; FRANK D. HUTCHINGS, judge. Opinion filed June 6,
1914. Affirmed.

*Thomas J. White, Henry Meade,* and *W. C. Rickel,*
all of Kansas City, for the appellants.

*R. J. Higgins,* city attorney, and *W. H. McCamish,*
assistant city attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action in the district court was brought by the city to enjoin the defendants from obstructing a public street and to quiet its title to the use of the land for the purposes of a highway. The court granted the relief prayed for and the defendants have appealed.

Many of the errors complained of are highly technical, and some of the questions are raised here for the first time. One of the principal contentions argued is that the court should have sustained an objection to any testimony on the ground that the petition fails to state a cause of action. It is insisted that injunction was not the proper remedy because the sole issue involved was the legality of the road. The defendants were attempting to erect a building in a traveled street, and injunction has repeatedly been held a proper remedy to prevent the obstruction of a street. The city rests under statutory obligations to keep its streets unobstructed. (1 Elliott on Roads and Streets, 3d ed., § 451; 3 McQuillen, Municipal Corporations, § 1371; *Council Grove Township v. Bowman,* 76 Kan. 563, 92 Pac. 550; *Smith et al. v. McDowell,* 148 Ill. 51, 35 N. E. 141, 22 L. R. A. 393; 4 Pomeroy's Equity Jurisprudence, 3d ed., § 1351.) It is objected that the petition does not show that the city had jurisdiction over the road. It alleges that the road was laid out in the first place by the county, and that it has been within the limits of the city for more than eighteen months prior to the beginning of the action. This was sufficient to show that the city has jurisdiction over the street. (*Hitchcock v. City of Oberlin,* 46 Kan. 90, 26 Pac. 466.) No motion or demurrer was leveled against the petition; the defendants filed an answer alleging that the action of the plaintiff with respect to the street was a continuing nuisance, and asked affirmative relief against the city. The petition was certainly good as

Kansas City v. Burke.

against an objection to the introduction of testimony. (*Barker v. Moodie,* post, p. 566.)

The claim that defendants were entitled to a jury trial is raised here for the first time. There was no request by the defendants for a jury during the trial; and besides, the action was purely an equitable one for an injunction, and the defendants were not entitled to a jury as a matter of right.

The street or road in question runs in a northwesterly direction from Quindaro boulevard, in Kansas City, across lands owned by the defendants, where it connects with a road running north to the city waterworks. For a number of years the main pipe lines leading from the city waterworks to the city have been kept and maintained in this road. The road was taken into the city about two years before the action was brought. Where the road crosses the land of the plaintiffs it is for a part of the distance substantially what was known as the "Tertling road" prior to 1886. Since 1889 it has been known as the "cinder road." In July, 1912, the plaintiffs, who had purchased the land in 1900, applied to the city authorities for permission to erect a building on their land, and were proceeding to erect the foundation of the building in the public street when the city brought the action. It is complained that the court committed error in admitting in evidence certain road records of Wyandotte county, the claim being that the records were insufficient and showed affirmatively that the proceedings relating to the road were illegal and void, and therefore the county commissioners had acted without jurisdiction. The records were offered for the purpose of showing that in 1886 a petition was presented and proceedings taken by the county board to review and relocate that portion of the road in question. It is conceded that the records are, defective in some respects, and the county clerk testified that he was unable to find in his files the original papers relating to the road. They seem to have disappeared. The record, however, was competent and relevant for the purpose of

showing an attempt by the county, in 1886, to relocate this road through the land now owned by the defendants.  The land then belonged to Martin Stewart, who was called as a witness at the trial.  He testified that he formerly owned the Burke land; that he was interested in the proposed road on account of it crossing a portion of his land; that he signed the petition and was present with the viewers when they viewed the road; that the road which they viewed crossed his land where the so-called "cinder road" now is; that he made a claim for damages and was allowed $50, and accepted it; that the road was afterwards worked by Mr. Gruendel, the road overseer.  He also said that after the road was relocated he fenced his land on the south side of it, and the evidence shows that when the Burkes purchased the land in 1900 the fence was there on the south side.  Mr. Gruendel testified that he remembered the review of the road in 1886, that he was road overseer for sixteen years, beginning sometime in the "eighties," and that he worked what is called the "cinder road" every year, that he graded it and put the cinders on it.  Several other witnesses testified substantially to the same effect. The objection to the admission of the records relating to the road was properly overruled.  They were sufficient to show color of title and the nature and extent of the claim under the proceedings for establishing the road, conceding that they were defective.  The law is well settled that where there has been an attempt by the authorities to establish a highway but the proceedings are defective and invalid, nevertheless a highway may be shown if the public has acted upon the claim under the defective proceedings and has used the land as a public highway for the requisite period.  (1 Elliott on Roads and Streets, 3d ed., § 192.)  In this case it was shown that the public had used the road as a highway under color of title from 1886 until 1912.  It is true there is some contention that the evidence shows that the defendants had not acquiesced in the use of the road by the public from 1900, when they went into posses-

sion under their deed, and that the requisite period of
time had not elapsed to entitle the public to claim a
highway by prescription. But conceding this to be
true, the city claims that a road has been established by
dedication. There can be no doubt that dedication may
be shown by acts of estoppel on the part of the owner.
(*Cemetery Association v. Meninger*, 14 Kan. 312, 316;
*Raymond v. Wichita*, 70 Kan. 523, 533, 79 Pac. 323.) It
is said that all that is necessary to the validity of a dedi-
cation is the intent of the owner to appropriate it to
public use and acceptance by the public; and that any
act or acts clearly manifesting an intent to dedicate is
sufficient. "Dedications have been established in every
conceivable way by which the intent of the dedicator
could be evinced." (13 Cyc. 453.) While there must
be an intent on the part of the owner to dedicate his
property to public use, courts are not concerned with
any secret intention in the mind of the owner, but only
with the intention manifested by his acts. (*Raymond
v. Wichita*, supra.) In the case last cited it was held
that the change of a highway "from a country road to
a city street did not affect the rights which the public
gained in the way of user, nor in any manner make the
acquiescence in such use by the claimant less effective
as an estoppel against him." (Syl. ¶ 1.) The acts of
Martin Stewart in signing the petition for the road, in
making a claim for damages and accepting the allow-
ance made by the board; the fact that he fenced his
land on one side of the road and for years thereafter
acquiesced in the improvement of the road by the road
overseer, were sufficient to estop him forever from as-
serting that the road was not a public highway. While
he owned the land he could not have maintained an ac-
tion to enjoin the public from the use of the road, be-
cause his acts would have estopped him. His appear-
ance with the viewers, his signing of the petition and
his conduct generally with respect to the road cured
any defect of notice or want of jurisdiction of the
county commissioners. (*Ogden v. Stokes*, 25 Kan. 517;

*Comm'rs of Woodson Co. v. Heed,* 33 Kan. 34, 5 Pac. 453; *Stephens v. Comm'rs of Leavenworth Co.,* 36 Kan. 664, 14 Pac. 175; *The State v. Hedeen,* 47 Kan. 402, 28 Pac. 203.) ˙

"Where defective proceedings are resorted to for the purpose of laying out a highway, and the land owner accepts the damage as awarded, he is estopped from contesting the validity of the highway, and the act may be regarded as a dedication, and if the owner of land intended and assented that the public should use it, and the public do so, that is a dedication. The owner may estop himself from demanding compensation prior to· the taking of his property, and also estop himself from prosecuting an action to prevent the taking of his property for public uses, in several ways; thus, if he expressly consents, or with full knowledge of the taking, and makes no objection, and permits a public corporation to enter upon his land and expend money thereon, and carry into operation the purposes for which it was taken; .or by voluntarily accepting money allowed as damages by the tribunal appointed for the assessment of such damages, the actual receipt of the money by the owner of the land ratifies the proceedings and amounts to a dedication of his property to such public uses." (2 Herman on Estoppel and *Res Judicata,* § 1149.)

There was evidence, therefore, to show a dedication by the owner of the land in 1886, and an acceptance and user by the public for fourteen years before the defendants purchased. "Except when user is relied on to raise a presumption of dedication the duration of the user is wholly immaterial." (13 Cyc. 465; *Raymond v. Wichita,* supra.) The user alone is not sufficient to found a presumption that there has been a dedication, unless it has been sufficient in time to amount to prescription; but fourteen years user by the public, from 1886 to 1900, coupled with the acts and conduct of the landowner, was certainly sufficient to show a dedication. (*Cemetery Association v. Meninger,* 14 Kan. 312, 316.)

The records respecting the road showed that Martin

Stewart claimed and was allowed $50 damages for land at another point in the road in a different section. He testified that he was paid that amount for damages to the Burke land. However, his other acts were sufficient to show a dedication if he had never been paid any damages. The judgment is a general one in favor of the city, and since the evidence was sufficient to show a dedication, the defendants are not in a position to take advantage of any defects or irregularities in the proceedings by which the county sought to establish the road. A permanent injunction against the defendants from obstructing the street might have given the city all the remedy it needed, but there certainly was no harm in quieting the title of the city to the use and possession of the street for the purposes of a highway. There is a conflict in the authorities as to whether ejectment will lie to secure the possession of streets dedicated to the use of the public. Many courts hold that ejectment is a proper remedy for a city; that a municipal corporation has more than an easement in its simplest form, the mere right to pass over the land of another; and, in fact, the right of the city may be said to extend beyond that. It has the right of exclusive possession, the right to grade and otherwise improve the street. It acquires such an interest in the land as is necessary for the enjoyment of the use by the public. (1 Elliott on Roads and Streets, 3d ed., §§ 321, 322.) The relief prayed for and granted in this case was therefore appropriate to the facts, and the judgment of the court in granting a permanent injunction and quieting the title of the city as against the defendants must be affirmed.